UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DONALD E. FLANIGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:16-CV-65-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| JEFFREY BUTTS, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Donald E. Flanigan is an inmate confined by the Kentucky Department of Corrections ("KDOC") at the Little Sandy Correctional Complex ("LSCC") located in Sandy Hook, Kentucky. Proceeding without counsel, Flanigan has filed a 42 U.S.C. § 1983 civil rights complaint, in which he asserts federal constitutional and pendant state law claims against eight defendants, who are all either LSCC or KDOC officials.[1] [*See* R. 1.] Flanigan has been granted *in forma pauperis* status in this proceeding. [*See* R. 6.]

The Court conducts a preliminary review of Flanigan's complaint because he asserts claims against government officials, and because he has been granted pauper status. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. In such cases, a district court must dismiss any action which (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *Id*. Because Flanigan

---

[1] The named defendants are: (1) Jeffrey Butts, Production Manager of the Kentucky Correctional Industries ("KCI") at the LSCC; (2) Hershel Adkins, Operations Manager of the KCI at the LSCC; (3) "Captain" Crouch, Captain of Internal Affairs at the LSCC; (4) Michael Finch, Captain in charge of Disciplinary Hearings at the LSCC; (5) Joseph Meko, Warden of the LSCC; (6) Jerry Sudduth, Jr., employee of the Offender Information Services of the KDOC; (7) Kim Potter-Blair, Deputy Commissioner of the KDOC; and (8) Rodney Ballard, Commissioner of the KDOC.

proceeds without counsel, the Court liberally construes his claims and accepts his factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). But as explained below, because Flanigan admits that he has not exhausted his various claims through the KDOC's multi-step administrative remedy process, his complaint will be dismissed without prejudice at this stage of the proceedings.

# I

Flanigan alleges numerous claims against the Defendants in his complaint. First, Flanigan challenges the structure of KDOC's Kentucky Offender Online Lookup System and argues the current system violates his privacy interests. Through this system, the public at large can electronically access information which includes, but is not limited to, the specifics of a KDOC inmate's criminal conviction(s), parole eligibility dates, and term(s) of incarceration. *See* http://corrections.ky.gov/communityinfo/Pages/KOOL.aspx (last visited on September 20, 2016). Flanigan, who was convicted of first degree sodomy, contends that the public's electronic access to that information puts him ". . . at risk for unnecessary violence, extortion and possibly even rape or death." [R. 1 at 3.] While the "j-pay" system apparently allows KDOC inmates to access only the "class" of the charge(s) against fellow inmates—for example, whether a particular KDOC inmate was convicted of a Class "A," "B," or "C" felony—Flanigan maintains incarcerated inmates can have friends and family look up other inmates and provide them with more specific information regarding an inmate's particular offense of conviction. [*See id.*]

Flanigan also challenges various conditions of his confinement at the LSCC. Flanigan alleges he has "feared for his life" ever since his arrival, because other inmates have learned through the Kentucky Offender Online Lookup System that he is a sex offender. He claims he has suffered mental anguish over the past four years of his life and provides examples of times

2

he specifically feared violence or exploitation. [*See id.* at 4.] For instance, Flanigan discusses an altercation which occurred between himself and another LSCC inmate Daquan Buckner, during which Buckner allegedly assaulted Flanigan and inflicted serious bodily injuries on him. [*Id.*] The altercation resulted in the commencement of a disciplinary proceeding. Flanigan provides little information about the disciplinary hearing, but he claims that KCI Supervisor Hershel Butts, LSCC Warden Joseph Meko, and a defendant identified as "Crouch"—the alleged LSCC Captain of Internal Affairs—violated his Fourteenth Amendment right to due process. [*See id.* at 4-5.]

According to Flanigan, inmate Buckner was later assigned to the same dormitory in which Flanigan was housed. [*Id.*] Flanigan alleges that, given the previous assault, LSCC Warden Joseph Meko violated Flanigan's Eighth Amendment right to remain free from cruel and unusual punishment by assigning Buckner to his dormitory. Meko also allegedly failed to protect Flanigan from future harm from Buckner. [*Id.*]

Ultimately, Flanigan seeks an order placing the LSCC "on hold;" he wishes to be reinstated to a previous job he held, and he wants the LSCC prevented from transferring him to any other prison where he may be subjected to violence in retaliation for having filed this § 1983 action. [*Id.* at 5.] Alternatively, he seeks an order directing the KDOC to transfer him to the Kentucky State Penitentiary in Eddyville, Kentucky. [*Id.* at 5-6.] Flanigan also asks that the KDOC be ordered to remove certain information from the Kentucky Offender Online Lookup System, and to post information showing only that he is a Class "A" felony offender. [*Id.* at 6.] Finally, Flanigan seeks significant compensatory and punitive damages from the Defendants to compensate him for the physical injuries inflicted upon him by Buckner and for his emotional

3

distress related to his physical injuries, the stress of the disciplinary proceedings, and the Defendants' negligence. [*Id.*]

Attached to Flanigan's complaint is a one-page form entitled "Form Regarding Exhaustion of Administrative Remedies." By way of this form, Flanigan indicates and attempts to explain why he did not administratively exhaust his various claims. Flanigan states:

> I contacted internal affairs and filed a CPP 17.4 (Administrative review form). I did not file a grievance because I knew it would not resolve the issue after internal affairs got involved and I was assured the warden was informed of my situation and would give me my job back at KCI. I also did not file a grievance because the records dept. replied to my administrative review and informed me I would have to contact D.O.C. main office in Frankfort. I also did not file a grievance because inmates are in charge of filing grievances and 1 did not want to inform another inmate of my charges in fear that it would be spread to the rest of the yard. I also feared filing a grievance because everyone knows it causes problems for whoever files them.

[R. 1-1.]

## II

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."), and it applies to any claim that arises out of any aspect of prison life, whether it involves general circumstances or particular episodes, and whether it alleges excessive force or some other wrong. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court explained that exhaustion of administrative remedies must be done "properly," which means going through all steps that the agency holds out, obeying

4

all directions, and adhering to all deadlines set by the administrative rules. *Id*. at 90. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner believes the procedure "to be ineffectual or futile." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotation marks and citations omitted).

The KDOC's administrative regulations, known as Corrections Policies and Procedures ("CPP"), set forth the grievance procedures for KDOC inmates. *See* 501 KAR § 6:20. Specifically, CPP 14.6 describes what inmates must do before filing a lawsuit about the conditions of their confinement. *See* http://corrections.ky.gov/communityinfo/Policies%20and%20Procedures/Documents/CH14/CPP%2014-6%20Grievance.pdf (last visited September 20, 2016). Pursuant to CPP 14.6, a KDOC inmate must begin the process by filing a written grievance and seeking an informal resolution. *See id.* at § II(J)(1)-(4) ("Step 1").[2] If the inmate is not satisfied at the end of that process, the inmate must submit a written request to the Grievance Committee requesting a hearing. *See id.* at § II(J)(2) ("Step 2"). If still dissatisfied with the Grievance Committee's disposition of the matter, the inmate must appeal to the Warden. *See id.* at § II(J)(3) ("Step 3"). Finally, if the inmate is unsatisfied with the Warden's decision, the inmate must file an appeal to the Commissioner of the KDOC. *See id.* at § II(J)(4) ("Step 4").

As a KDOC prisoner, Flanigan was required to pursue all four steps of the KDOC's administrative remedy process before filing this § 1983 action. But Flanigan freely admits that he opted to circumvent that process and instead file suit on his claims immediately in this Court. While Flanigan explains his perception that pursuing the grievance process would have been

---

[2] Grievances concerning healthcare claims must be pursued through the steps set forth in CPP 14.6, § II(K)(1)-(3).

futile, that explanation does not suffice. As explained above, assertions of futility do not excuse a plaintiff from the exhaustion requirements. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations.").

Further, where a plaintiff admits in his complaint that he did not exhaust his claims by pursuing all of his administrative remedies before he filed suit, or that he started the exhaustion process but not did not complete it, dismissal of the complaint is appropriate upon initial review. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007) (explaining that a district court can dismiss a complaint *sua sponte* when it is apparent from the face of the complaint that claim is barred by affirmative defense); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (where complaint was clear that prisoner failed to exhaust administrative remedies, the district court could dismiss it *sua sponte* for failure to state a claim); *Washington v. Unknown C/O*, No. 1:13-CV-10, 2013 WL 170173, at *4 (S.D. Ohio Jan. 16, 2013) ("…although exhaustion of administrative remedies need not be pled specifically in the complaint, where it is apparent from the face of the complaint that an inmate has failed to exhaust the prison grievance procedure, *sua sponte* dismissal for failure to state a claim upon which relief may be granted is appropriate on initial review of the complaint."); *Fletcher v. Myers*, No. 5:11-141-KKC (E.D. Ky. May 17, 2012), *aff'd*, No. 12-5630 (6th Cir. Jan. 4, 2013) ("Because Fletcher's failure to exhaust, or to attempt to exhaust, administrative remedies is apparent from the face of his complaint, the district court properly dismissed Fletcher's complaint on that basis.").

Based on this authority, and Flanigan's admission that he has not exhausted his administrative remedies as to his various allegations, Flanigan's § 1983 claims must be

dismissed without prejudice. And in light of that dismissal, Flanigan's pendant state law claims should also be dismissed at this time. Once a district court has dismissed all federal claims over which it possessed original jurisdiction, a district court may decline to exercise supplemental jurisdiction over any remaining state law claims. *See Gibbs v. Montgomery County Agricultural Society*, 140 F. Supp. 2d 835, 845 (S.D. Ohio 2001); *see also Saglioccolo v. Eagle Ins. Co*., 112 F.3d 226, 233 (6th Cir 1997). Indeed, the Sixth Circuit has recognized that where all federal claims are dismissed before trial, dismissing the remaining state claims is generally the appropriate course of action. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Consistent with that principle, the Court declines to exercise supplemental jurisdiction over Flanigan's state law claims, *see* 28 U.S.C. § 1367(c)(2), and Flanigan's complaint is thus dismissed without prejudice in its entirety.

### III

Accordingly, the Court hereby **ORDERS** as follows:

1. Plaintiff Donald E. Flanigan's claims alleging violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution, brought pursuant to 42 U.S.C. § 1983 are **DISMISSED WITHOUT PREJUDICE**, in light of Mr. Flanigan's admitted failure to exhaust his administrative remedies;

2. Plaintiff Flanigan's claims asserting violations of various Kentucky state statutes are **DISMISSED WITHOUT PREJUDICE**, in light of the dismissal of Flanigan's § 1983 claims; and

3. This proceeding is **STRICKEN** from the Court's active docket.

This the 28th day of September, 2016.

Gregory F. Van Tatenhove
United States District Judge